UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACK CAMPBELL,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KOOTENAI COUNTY JAIL,<br><br>　　　　　Defendant. | Case No. 1:25-cv-00536-AKB<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

　　　The Clerk of Court conditionally filed Plaintiff Jack Campbell's Complaint because of Plaintiff's status as an inmate and in forma pauperis request. A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

　　　Having reviewed the record, the Court enters the following Order permitting Plaintiff to proceed on his claim, under the Americans with Disabilities Act, that he was not provided a handicap-accessible shower while he was held in the Kootenai County Jail. All other claims will be dismissed.

**1.　　Standards of Law for Screening Complaints**

　　　A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing

court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

2.  **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction. The events giving rise to Plaintiff's claims occurred when he was an inmate in the Kootenai County Jail.

Plaintiff is disabled and suffers from a variety of physical and mental illnesses. Plaintiff entered the Kootenai County Jail on May 15, 2024. In the next month, Plaintiff was provided only two showers—after Plaintiff defecated himself because of severe pain. *Compl.*, Dkt. 3, at 3.

The lack of showers resulted from Plaintiff's placement in the medical pod, or Q-pod, which did not have a handicap-accessible shower. R-pod, which is the housing unit next to Q-pod, did have a handicap-accessible shower, but jail staff did not permit Plaintiff to use that shower. At

one point, jail staff provided Plaintiff with a flimsy chair to use in the shower, but it was not a proper shower chair. *Id*. at 3–5.

Additionally, inmates in the medical pod were not able to attend "church, Bible study, AA, NA, [or] Celebrate Recovery." *Id*. at 9. Jail officials informed Plaintiff that there was insufficient staffing to take inmates to these programs from the medical pod. *Id*.

In Claim 1 of the Complaint, Plaintiff claims that the lack of a handicap-accessible shower in the medical pod, and Defendant's failure to permit Plaintiff to use the handicap-accessible shower in the nearby R-pod, violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. *See Compl*. at 5. Claim 2 asserts that Plaintiff's placement in the medical pod violated both the ADA and the Due Process Clause of the Fourteenth Amendment. *Id*. at 7. Finally, in Claim 3, Plaintiff alleges that the inability to attend religious services or programs such as Alcoholics Anonymous, Narcotics Anonymous, and Celebrate Recovery violated the ADA.

**3.    Discussion**

   *A.    ADA Claims*

The ADA generally prohibits discrimination on the basis of an individual's disability. In order to proceed with an ADA claim, a plaintiff must plausibly allege (1) that he has a disability; (2) that he is otherwise qualified to participate in or receive a public entity's services, programs, or activities; (3) that he was denied the benefits of those services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was *by reason of* his disability. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

By statutory definition, a Title II ADA claim must be brought against the state or state entity. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) (holding that Title II of the ADA validly abrogates Eleventh Amendment immunity for states for conduct that actually violates the

Fourteenth Amendment); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act.").

Under the ADA, the governmental entity is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). "The ADA does not require perfect parity among programs offered by various facilities that are operated by the same umbrella institution. But an inmate cannot be categorically excluded from a beneficial prison program based on his or her disability alone." *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1221 (9th Cir. 2008).

Plaintiff's Complaint, liberally construed, appears to state a colorable ADA claim for failure to provide Plaintiff with adequate shower facilities so that he could shower safely more than twice in one month, as set forth in Claim 1.

However, the Complaint does not state a plausible ADA claim, as set forth in part of Claim 2, that Plaintiff was placed in the medical pod on account of his disability. The "obvious alternative explanation," *Iqbal*, 556 U.S. at 682 (internal quotation marks omitted), is that Plaintiff was placed in the medical pod because his medical and mental health conditions required treatment in that unit. Thus, Plaintiff may not proceed on this claim.

For the same reason, Plaintiff may not proceed on the portion of Claim 3 that asserts disability discrimination based on Plaintiff's lack of access to various programs due to his placement in the medical pod. Once again, rather than being placed in the medical pod on account

of his disability, the obvious alternative explanation is that the placement was necessary to treat Plaintiff's medical and mental health conditions—not because he was disabled.

### B.     Section 1983 Claims

Plaintiff also brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

To bring a § 1983 claim against a local governmental entity such as the Kootenai County Jail, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

      i.      <u>Due Process Claim Based on Placement in Medical Pod or "Administrative Segregation"</u>

Part of Claim 2 asserts that Plaintiff was placed in the medical pod without due process. However, Plaintiff also states he was placed in "administrative segregation," which is a completely different type of housing unit. *Compl*. at 7. The Complaint is internally inconsistent on this basis, and, as such, does not state a plausible due process claim. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014) (holding that, where allegations in the complaint were internally inconsistent, the allegations supported, "at best," a "'possible' basis to believe that Defendants [acted unlawfully], not a 'plausible' one.").

Moreover, the Complaint does not plausibly allege that the failure to give Plaintiff a hearing prior to his placement in the medical pod or in administrative segregation was the result of a policy, custom, or practice of the Kootenai County Jail. Plaintiff's due process claim fails on this basis as well.

        ii.        <u>Lack of Access to Religious Services and Programs</u>

Plaintiff does not expressly assert a free exercise claim. However, mindful of Plaintiff's pro se status and considering Plaintiff's allegation that he was unable to attend church or Bible study while in the medical pod or administrative segregation, the Court will construe Claim 3 as including such a claim.

The Free Exercise Clause of the First Amendment absolutely protects the right to believe in a religion—it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296, 303–04 (1940). Inmates retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). An inmate who is an adherent of a minority religion must be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). A prison need not, however, provide "identical facilities or personnel" for "every religious sect or group within a prison," and a "special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Id.* at 322 n.2.

To serve as a basis for a viable claim challenging a prison restriction under the Free Exercise Clause, an inmate's belief must be both sincerely held and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). Further, the burden placed on the inmate's religious exercise by the defendants' actions must be substantial. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). *De minimis*—or minor— burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. *See, e.g.*, *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate

at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

Challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 125 (1977) (quotation omitted). What constitutes a reasonable opportunity for religious exercise, therefore, must be evaluated within the context of a prison's need for security, among other legitimate goals. *O'Lone*, 482 U.S. at 350-53 (1987) (holding that a prison's policy of not allowing Muslim inmates on work detail to return to the prison to attend Jumu'ah, a group worship service, did not violate the Constitution).

So long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction is valid. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Factors to be considered in this reasonableness inquiry include (1) whether there is a logical connection between the governmental interest and the particular policy or decision at issue; (2) whether "alternative means of exercising the right remain open to prison inmates"; (3) the impact that accommodating a prisoner's religious practice would have on "other inmates, on prison personnel, and on allocation of prison resources generally"; and (4) whether there is an absence of "obvious, easy alternatives" to the policy or decision. *O'Lone*, 482 U.S. at 350–53 (internal quotation marks and alterations omitted). Courts must take care to avoid "substitut[ing] [their] judgment on difficult and sensitive matters of institutional administration." *Id.* at 353 (internal quotation marks and alteration omitted).

A jail or prison's occasional failure to accommodate a religious practice does not violate the Free Exercise Clause where the failures were not caused by "anything other than institutional

shortage." *Wintrode v. Ada Cnty. Jail Emps.*, No. 1:24-CV-00015-DCN, 2025 WL 2374328, at *3 (D. Idaho Aug. 13, 2025) (unpublished). Similarly, a temporary delay in accommodating religious practice does not violate the First Amendment when caused by normal administrative or institutional delay. *See Tapp v. Stanley*, 2008 WL 4934592, at *7 (W.D.N.Y. Nov. 17, 2008) (unpublished) (holding that a 3-month delay in providing a prisoner with a religious meal did not substantially burden the prisoner's sincerely held religious beliefs where the problem was "caused by ordinary administrative delay").

Plaintiff does not describe his religious beliefs or his religious practice. He alleges only that he was unable to attend church or Bible study. This is insufficient to permit a reasonable inference that Plaintiff suffered a substantial burden on the exercise of his religious beliefs. Nor does the Complaint plausibly allege that the restriction was not reasonably related to legitimate penological interests. Concerns about adequate jail staffing is unquestionably a legitimate interest, and curtailing programs that require staff to accompany inmates to those programs is rationally related to that penological interest. Thus, the Complaint fails to state a plausible free exercise claim.

**4.      Motion for Appointment of Counsel**

Plaintiff also seeks appointment of counsel. Dkt. 4. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

claims pro se considering the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id.*

Plaintiff's Complaint, liberally construed, appears to state a claim upon which relief could be granted if the allegations are proven at trial. However, without more than the bare allegations of the Complaint, the Court does not have a sufficient basis upon which to assess the merits at this point in the proceeding. The Court also finds that Plaintiff has articulated the claims sufficiently, and that the legal issues in this matter are not complex. Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel. If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one, and it is often difficult to find attorneys willing to work on a case without payment—especially in prisoner cases, where contact with the client is particularly difficult. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if possible.

5.      **Conclusion**

Plaintiff may proceed as outlined above. This Order does not guarantee that Plaintiff's claims will be successful. Rather, it merely finds that Claim 1 is plausible, meaning that it will not

be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendant may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[1] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Appointment of Counsel (Dkt. 4) is DENIED.

2. Plaintiff may proceed as set forth above on Claim 1 of the Petition. All other claims are DISMISSED. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[2]

---

[1] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to §§ 1915 and 1915A and may be filed only in extraordinary circumstances.

[2] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

3. Defendant Kootenai County Jail will be allowed to waive service of summons by executing, or having counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendant chooses to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to **Stanley Mortensen, Kootenai County Prosecuting Attorney, 501 Government Way, Coeur d'Alene, Idaho, 83814**.

4. Should any entity determine that the individual for whom counsel for the entity was served with a waiver is not, in fact, its employee or former employee, or that its attorney will not be appearing for a former employee, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff.

5. If Plaintiff receives a notice indicating that service will not be waived, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service address of Defendant, including the identity and physical service address of the individual who must be served on behalf of the entity Defendant, or Plaintiff's claims may be dismissed without prejudice.

6. After Defendant appears, the Court will issue an order governing the pretrial schedule, including disclosure and discovery in this case. *See* General Order 343, *In Re: Adoption of a Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases* (Feb. 8, 2019).

7. Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

8. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

9. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

10. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions

INITIAL REVIEW ORDER BY SCREENING JUDGE - 13

submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

11. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

12. Pursuant to General Order 457, this action is hereby RETURNED to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: December 10, 2025

_____
Amanda K. Brailsford
U.S. District Court Judge